UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY
CASE NO.:

IN THE MATTER OF THE COMPLAINT
OF OFFSHORE MARINE TOWING, INC., AS
OWNER OF MOTOR VESSEL "TOWBOATU.S.
#5", 2000 JC BOAT BUILDERS, INC., 31 FT,
OFFICIAL NUMBER 1283430, HER ENGINES,
TACKLE, GEAR, FURNITURE, APPAREL,
EQUIPMENT, AND OTHER APPURTENANCES,
FOR EXONERATION FROM OR LIMITATION
OF LIABILITY,

        PETITIONER.

_____/

## PETITIONER'S VERIFIED COMPLAINT FOR
## EXONERATION FROM OR LIMITATION OF LIABILITY

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA:

COMES NOW Petitioner, Offshore Marine Towing, Inc. (hereinafter "Petitioner"), as

owner of motor vessel "TOWBOATU.S. #5," bearing Official Number 1283430 (the "Vessel"),

by and through its undersigned counsel, and pursuant to the provisions of 46 U.S.C. § 30501 *et*

*seq.*, Supplemental Rule F and Local Admiralty Rule F, petitions this Court for Exoneration from

or Limitation of Liability, for all claims arising out of an incident that occurred on or about

October 30, 2018, and as ground therefore alleges:

    1.     This is a case of admiralty and maritime jurisdiction within the meaning of Rule

9(h) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1333 and U.S. Const. Art. III, § 2.

    2.     This action is brought by Petitioner pursuant to the terms of the Limitation of

Liability Act, 46 U.S.C. § 30501 *et seq.* and Supplemental Rule F governing Limitation of

Liability actions.

3.     At all times material hereto, the Vessel is and has been located within the territorial limits of the United States District Court for the Southern District of Florida. Therefore, venue is proper in this District pursuant to Supplemental Rule F(9).

4.     At all times hereinafter mentioned and relevant to this litigation, Petitioner, a Florida limited liability company, with its principal place of business in Pompano Beach, Broward County, Florida, was and is the owner of TOWBOATU.S. #5, Official No. 1283430, a 2000-built motor boat, with 31 feet in length, 13 feet in breadth and 3 feet in depth. The Vessel was built in Hudson, New Hampshire by JC Boat Builders, Inc. and maintains her home port in Port Everglades.

5.     The events, acts and circumstances giving rise to this Petition arose, on or about October 30, 2018, while the Vessel was engaged in maritime activity on navigable waters in Dania Beach, Broward County, Florida, *to wit*, actively performing a commercial tow of another motor vessel owned by Simon Bradwell (hereinafter "Bradwell Vessel") on the Dania Cutoff Canal, west of Interstate highway 95, in Dania Beach, Broward County, Florida.

6.     To Petitioner's knowledge, the Vessel has not been attached or arrested *in rem* in any civil proceeding and no suits have been commenced against Petitioner *in personam* allegedly caused by the events described in this Petition.

7.     Prior to the alleged subject allision, in the morning on the same date (October 30, 2018), Mr. Bradwell had arranged for Petitioner to perform a tow of the Bradwell Vessel on the Dania Cutoff Canal. This first tow was terminated before the Bradwell Vessel was towed to its final destination as the CSX Train Bridge, which is positioned to cross above and perpendicular to the Dania Cutoff Canal, lacked sufficient air draft for the Bradwell Vessel to pass underneath.

8.     As Mr. Bradwell was aware that the CSX Train Bridge lacked sufficient air draft for the Bradwell Vessel to pass underneath, later on the same date, Mr. Bradwell removed a metal railing around the upper helm from the Bradwell Vessel to reduce the air draft of the Bradwell Vessel. The Petitioner made inquiry as to future water tide and current conditions on the Dania Cutoff Canal that would provide the largest available air draft underneath the CSX Train Bridge. The Petitioner presented the same tide and current information to Mr. Bradwell and Mr. Bradwell agreed to delay attempting a second tow of the Bradwell Vessel until later that night when the water conditions on the Dania Cutoff Canal were at slack low tide.[1] Based on the information provided by Mr. Bradwell to the Petitioner regarding the purported air draft of Bradwell's Vessel after Mr. Bradwell had removed a metal railing around the upper helm from the Bradwell Vessel, the water tide and current conditions at such time presented sufficient air draft underneath the CSX Train Bridge.

9.     At approximately 8:00 p.m. on the same date (October 30, 2018), Mr. Bradwell arranged for Petitioner to perform a second tow of the Bradwell Vessel. The Petitioner dispatched the Vessel to perform the tow of the Bradwell Vessel based on information provided by Mr. Bradwell that the slack low tide coupled with the removal of the metal railing from the upper helm of the Bradwell Vessel allowed sufficient air draft underneath the CSX Train Bridge for the Bradwell Vessel to transit by way of Dania Cutoff Canal. Acting on such information, the captain of the Vessel attached the Bradwell Vessel to the Vessel's portside in a hip-tow configuration and proceeded underway and was slowly making way eastbound on the Dania Cutoff Canal, per the request of Mr. Bradwell. Allegedly, due to the actual lack of sufficient air

---

[1] "Slack" means that there was minimal to no horizontal water current moving in or out of that particular geographical area to or from the open ocean at that time. "Low tide" means the vertical level of the volume of water in that particular geographical area was at or near its lowest level at that time.

draft underneath the CSX Train Bridge, a convex shaped compass, which is affixed to the top of the console of the upper helm of Bradwell's Vessel, allegedly first allided with the CSX Train Bridge followed by other parts of the upper helm. Further, allegedly, as a result of the alleged allision, Bradwell's Vessel sustained other damage and Mr. Bradwell sustained injury.

10.     There was no negligence on the part of Petitioner, its agents, principals, servants, employees or anyone for whom the Petitioner may be legally responsible, that cause or contributed in any way to any alleged injury, loss or damage sustained by any person, vessel or other claimant.

11.     The alleged allision began, and the loss, damage, injuries and destruction described above were done, occasioned and incurred, entirely without fault on the part of Petitioner, its agents, principals, servants, employees or anyone for whom the Petitioner may be legally responsible, and Petitioner is entitled to exoneration therefrom.

12.     The alleged allision began, and the losses, damages, injuries or destruction resulting therefrom, were done, occasioned and incurred without the privity or knowledge of Petitioner within the meaning of 46 U.S.C. § 30505, and without the privity or knowledge of Petitioner's principles, superintendents or managing agents, within the meaning of the same under the general maritime law.

13.     The alleged allision began, and the losses, damages, injuries or destruction resulting therefrom, were done, occasioned and incurred without Petitioner its agents, principals, servants, employees or anyone for whom the Petitioner may be legally responsible were without the privity or knowledge of the Petitioner as Petitioner presented Mr. Bradwell with the tides and currents information from its inquiry and Mr. Bradwell represented that such water conditions

coupled with the removal of the metal railing from the upper helm of the Bradwell Vessel would allow for sufficient air draft underneath the CSX Train Bridge for the Bradwell Vessel to transit by way of Dania Cutoff Canal. This fact is demonstrated by Mr. Bradwell's request for the Petitioner to perform a second tow based on the same information and circumstances.

14.     Mr. Bradwell has made a pre-suit claim for injuries and damages. Mr. Bradwell's current demand is for the Petitioner to tender its insurance "policy limits," which pursuant to Petitioners' policy of insurance is in the amount of $1,000,000.00 (wasting) "for liabilities to third parties for property damage or bodily injury." As such, Petitioner anticipates that Mr. Bradwell, and perhaps others, may bring suit for injuries and damages up to or in excess of the amount of $1,000,000.00.

15.     Petitioner avers the amount of Mr. Bradwell's damages that may be brought against Petitioner will far exceed the residual value of its interest in the Vessel and pending freight.

16.     Petitioner claims the benefits of the provisions of § 30501 et seq. of Title 46, United States Code and Supplemental Rule F, Federal Rules of Civil Procedure, in this proceeding by reason of the facts and circumstances set forth above. Petitioner further desires to contest its liability and the liability of the Vessel, to any extent whatsoever for any and all loss, destruction, damage, death and injury caused by or resulting from the incident described above, and to be exonerated from all such liability.

17.     The injuries and damages claimed were not caused or contributed to by any fault or want of care on the part of Petitioner, its Vessel, or persons for whom the Petitioner or the Vessel were or are legally responsible.

18.     The foregoing casualty and any alleged claims arising therefrom were occasioned and occurred without the privity or knowledge of the Petitioner concerning facts or circumstances which caused or contributed to the foregoing casualty that existed at or prior to the commencement of the Vessel's arrival to conduct the subject tow of the Bradwell Vessel and was not within the privity or knowledge of the owner of the Vessel or anyone for whom the owner was or is legally responsible.

19.     On or about September 9, 2019, Lawlor, White & Murphey, LLP, provided written notice of the alleged injuries and damages on behalf of Mr. Bradwell. Allegedly, Mr. Bradwell sustained injuries, property damage to his vessel—Bradwell's Vessel—and other damages and a demand related to the same. Bradwell's vessel is a 1982-built motor boat, with 38 feet in length, 14 feet in breath, and 8.1 feet in depth, built in Holland, Michigan by Murray Chris-Craft. Mr. Bradwell's above-referenced written notice and demand to the Petitioner was the Petitioner's first written notice of a claim against it as a result of the alleged subject allision.

20.     Pursuant to the provisions of Supplemental Rule F, this action is being filed within six months of the date the Petitioner received the first written notice of claim against the Vessel or Petitioner for the aforesaid alleged subject allision.

21.     The Petitioner believes that the amount which may be claimed against it as damages arising from the alleged subject allision will exceed the amount or value of the interest of the Petitioner in the Vessel at the time of the alleged casualty.

22.     To the Petitioner's knowledge, there are no demands, unsatisfied liens, or claims of liens arising on said voyage against the Vessel except as stated herein.

www.chaloslaw.com

23.     Subject to an appraisal, the Petitioner's interest in the Vessel, post alleged subject allision, is $60,000.00. *See Affidavit of Value, attached hereto as **Exhibit 1**.*

24.     As the Vessel was a motor boat used, in part, as a towing vessel, there was no pending freight.

25.     Based on the value of Petitioner's interest in the Vessel, a Letter of Undertaking in support of the security amount is attached hereto as **Exhibit 2**, said sum being not less than the amount or value of Petitioner's interest in the Vessel and its lack of any pending freight at the end of the aforesaid voyage, plus interest for 2 years at the rate of six percent (6%) per year and costs.

26.     The Petitioner, as owner of the Vessel, claims exoneration from liability for any and all losses, damages, injuries, or destruction caused by said alleged allision, or done, occasioned, or incurred on the voyage during which said alleged allision or casualties occurred and for any and all claims therefore.

27.     The Petitioner has valid defenses for Mr. Bradwell's claim and any other claimants based upon applicable facts and law.

28.     The alleged allision occurred solely as a result of another's negligence, fault, errors, or omissions.

29.     In the alternative, if any Claimant was injured as a result of the negligence, fault or omission of the Vessel or those for whom it or its owner is legally liable, and it is determined that the owner had privity and knowledge of the facts and circumstances proximately causing Claimant's injuries, which is continuously denied, Claimant's own negligence, errors or omissions, contributed to their injuries and any amount of recovery they may obtain against the

Vessel and/or its owner must be reduced in proportion to Claimant's negligence, errors, omissions or other fault.

30.    In the alternative, if any Claimants were injured as a result of the negligence, fault or omission of the Vessel or those for whom it or its owners is legally liable, such negligence was caused or contributed to by some other person or entity outside the privity or knowledge of the Petitioner, thereby entitling Petitioner to exoneration from or limitation of liability and any recovery against the Vessel and/or its owner must be reduced in proportion to that other person's negligence, errors, omissions or other fault.

31.    If the Petitioner be adjudged liable as owner of the Vessel, the Petitioner alternatively claims the benefit of limitation of liability as provided in Sections 4283, 4284, 4285 and 4289 of the Revised Statutes of the United States, 46 U.S.C. § 30501 et seq., and the various statutes supplemental thereto and amendments thereof, Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and by the Rules and Practice of this Court.

WHEREFORE after due proceedings are had herein, the Petitioner prays for the following:

A.    That this Court enter an Order directing the issuance of a Monition to and enjoining all persons, firm and corporations claiming damages for any and all losses, damages, injuries, death, or destruction done, occasioned, sustained, or incurred by or resulting from the alleged accident described above and citing them to appear as directed in said Order and to make due proof of their respective claims and also to appear and answer the allegations of this

Complaint according to the law and practices of this Honorable Court on or before a date certain and time to be fixed by the Monition;

   B.  That this Court enter an Injunction restraining, staying and enjoining the prosecution of any and all actions, suits, or proceedings already commenced, if any, and the commencement or prosecution thereafter of any and all actions, suits, or proceedings of any nature or description whatsoever in any jurisdiction against the Petitioner, as aforesaid, or against the Vessel, or against any property of the Petitioner except in this action, to recover damages for or in respect of any loss, damage, injury, or destruction caused by or resulting from the aforesaid casualties, or done, occasioned, or incurred as a result of the alleged accident described above;

   C.  That this Honorable Court approve the above-described Letter of Undertaking filed with the Court by Petitioner as security for the potential claims subject to the Claimant's right to challenge the security as permitted by the Supplemental Rules and Local Admiralty Rules;

   D.  That this Court adjudge in this proceeding that:

     a. The Petitioner is not liable to any extent for any loss, damage, injury or destruction or for any claim therefore, in any way arising out of or resulting form said alleged accident, or done, occasioned, or incurred on said voyage; or

     b. If the Petitioner shall be adjudged liable, as owner of the Vessel, then any such liability be limited to the amount or value of the Petitioner's interest in the Vessel and her pending freight at the end of the voyage, if any, on which said vessel was engaged at the time of said alleged accident, and

that the Petitioner be discharged therefrom on the surrender of such interest, divided pro-rata according to the hereinabove-mentioned statutes and rules amongst such Claimants as may duly prove their claims before this Court saving to all Claimants any priorities to which they may be legally entitled, and that judgment may be entered discharging the Petitioner, as owner of the Vessel, and the said Vessel from all further liability; and

c.  The Petitioner may have such other and further relief as may be just and proper in this cause.


Respectfully submitted,


By:     s/ Michelle Otero Valdes
        Michelle Otero Valdes, Esq.
        Florida Bar No.: 14990
        Manooch Thomas Azizi, Esq.
        Florida Bar No.: 1003400
        Chalos & Co, P.C.
        2030 S. Douglas Road, Suite 117
        Coral Gables, Florida 33134
        Tel: (305) 377-3700
        Fax: (866) 702-4577
        Email: mov@chaloslaw.com
        Email: manooch@miamimaritimelaw.co
        *Attorneys for Offshore Marine Towing, Inc.*

## VERIFICATION AND DECLARATION

The undersigned, Chloe Collins, as Director of Administration for Offshore Marine Towing, Inc. states, verifies and declares under the penalties of perjury of the laws of the United States of America and the State of Florida that she is authorized to make this verification and the information in the Verified Complaint is true and correct to the best of his knowledge and belief.

Chloe Collins, as Director of Administration
and authorized representative of
Offshore Marine Towing, Inc.